# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

MARY ELIZABETH HARDESTY,     :
                                  :
      Plaintiff,                  :
                                  :
v.                                :     No. 3:10cv333 (MRK)
                                  :
MICHAEL J. ASTRUE, Commissioner   :
of the Social Security Administration,   :
                                  :
      Defendant.              :

## <u>MEMORANDUM OF DECISION</u>

*Pro se* Plaintiff Mary Elizabeth Hardesty brings this action pursuant to the Social Security Act ("the Act"), 42 U.S.C. §§ 405(g) and 1383(c)(3). Ms. Hardesty formerly worked as a massage therapist in Norwich, Connecticut. She has a number of physical and mental ailments and has not worked since September 1, 2004. She seeks review by this Court of a final decision of Defendant Michael J. Astrue, the Commissioner of the Social Security Administration, denying her application for Supplemental Security Income and Social Security Disability Insurance Benefits.

There are two motions currently pending in this action. The first is Ms. Hardesty's Motion for Order Reversing the Decision of the Commissioner [doc. # 14]. In support of that motion, Ms. Hardesty argues that the Administrative Law Judge's ("ALJ's") finding that Ms. Hardesty was not disabled during the period between October 1, 2004 and December 31, 2009 was not supported by substantial evidence, and was contrary to applicable legal standards.[1] The second is the

---

[1] The Commissioner represents that Ms. Hardesty "asks this Court to re-weigh the evidence and re-assess her credibility," which "is not something this Court is empowered to do." Mem. in Supp. of Def.'s Mot. for an Order Dismissing Pl.'s Case, or, Alternatively, for an Order Affirming the Commissioner's Decision [doc. # 18] at 11. The Court is well aware that the review authorized by

Commissioner's Motion for an Order Dismissing Plaintiff's Case, or, Alternatively, for an Order Affirming the Commissioner's Decision [doc. # 18]. In support of the latter motion, the Commissioner argues that the Court should dismiss Ms. Hardesty's case because she filed her motion to reverse two days after a court-imposed deadline. *See* Order [doc. # 13] (setting October 4, 2010 as the deadline for Ms. Hardesty to file a motion to reverse the Commissioner's decision). Alternatively, the Commissioner argues that the ALJ's decision was supported by substantial evidence and evinced no legal error.

The Court will not dismiss Ms. Hardesty's case merely because she missed a court-imposed deadline by two days. However, after carefully considering both parties' arguments on the merits, the Court ultimately agrees with the Commissioner that the ALJ's decision that Ms. Hardesty was not disabled during the relevant period was supported by substantial evidence and evinced no legal error. For those reasons, Ms. Hardesty's Motion for Order Reversing the Decision of the Commissioner is DENIED, and the Commissioner's Motion for an Order Dismissing Plaintiff's Case, or, Alternatively, for an Order Affirming the Commissioner's Decision is GRANTED.

## I.

The Court assumes the parties' familiarity with the factual and procedural background of this case, and will therefore only briefly set forth the factual and procedural background at the outset. Ms. Hardesty was born on February 14, 1962. She has a high school diploma and attended community college for a time, but did not earn a college degree. In 1991, she received training in

---

the Act is limited in scope. *See* 42 U.S.C. § 405(g); *see, e.g.*, *Crossman v. Astrue*, --- F. Supp. 2d ----, 2010 WL 2982987, at *1 (D. Conn. 2010). The Court is also well aware of its obligation to construe *pro se* filings liberally. *See Ajlani v. Chertoff*, 545 F.3d 229, 235 (2d Cir. 2008).

massage therapy. She worked for nine years as a massage therapist at the Spa at Norwich Inn in Norwich, Connecticut. During her life, she has also worked as a companion for an elderly woman, and also as a receptionist, though only for one week.

In 2004, Ms. Hardesty was diagnosed with cancer in her left breast. Around the same time, she was fired from her job as a massage therapist at the Spa at Norwich Inn for missing too much work. She has not been employed since that time. She does little work around her house, which she shares with her boyfriend, David, other than taking care of their pet cats and dogs. She has occasionally been able to travel out of state, but only with substantial assistance from David.

During the period at issue in this case, Ms. Hardesty has suffered from a number of physical ailments in addition to breast cancer. In October of 2004, Ms. Hardesty underwent a lumpectomy to remove the tumor in her left breast as well as an axillary dissection to remove lymph nodes from the area of her left breast, and she thereafter underwent chemotherapy and radiation. In 2006, Ms. Hardesty was diagnosed with cellulitis, a skin infection caused by bacteria, and with lymphedema, also known as lymphatic obstruction, a chronic condition characterized by swelling – often in the arms or legs – resulting from blockages in lymph passages. She also has had neck and shoulder pain resulting from a fall in 2006 and from an automobile accident in 2008.

In addition, Ms. Hardesty has a long history of mental health problems. During the period at issue in this case, she has suffered from bipolar disorder, depression, and anxiety. She also has a history of alcoholism. Her medical records indicate a longstanding, severe dependence on alcohol that has had disruptive effects on her personal relationships and on her employment. Her medical

records also document multiple suicide attempts. However, as of mid-2009, the date of the most recent medical records, Ms. Hardesty had been sober for approximately six months.

Ms. Hardesty filed her claim for Supplemental Security Income and Social Security Disability Insurance Benefits on August 28, 2006. Ms. Hardesty alleged in her claim that she had been unable to work after September 1, 2004 by reason of a combination of physical and mental impairments. Based on her earnings records, she remained insured through December 31, 2009. Ms. Hardesty's claim was denied at the initial level of review on October 25, 2006, and a Federal Reviewing Official issued a written decision denying Ms. Hardesty's claim on August 28, 2007.

Ms. Hardesty then filed a request for a hearing before an ALJ. An ALJ held a hearing on Ms. Hardesty's claim in New Haven, Connecticut on November 17, 2008.[2] On September 17, 2009, the ALJ issued a decision denying Ms. Hardesty's claim. The ALJ determined that Ms. Hardesty had a number of severe physical and mental impairments, but that she nonetheless had the residual functional capacity to perform light work, and that based on her residual functional capacity, her age, education, and work experience, there were jobs that existed in significant numbers in the national economy that she still could perform. The Decision Review Board selected Ms. Hardesty's claim for review, but the ALJ's decision became final when the Decision Review Board did not act on her claim within ninety days from the date on which Ms. Hardesty was notified of the ALJ's decision. *See* 20 C.F.R. § 405.420.

On March 5, 2010, Ms. Hardesty filed her Complaint [doc. # 4] in this Court seeking judicial review of the ALJ's decision pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). The Commissioner

---

[2] Although Ms. Hardesty is currently *pro se*, a lawyer represented her at the ALJ hearing.

filed an Answer [doc. # 9] on June 23, 2010. On June 24, 2010, United States Magistrate Judge William I. Garfinkel ordered Ms. Hardesty to file a motion to reverse or remand the Commissioner's decision and an accompanying memorandum of law no later than July 26, 2010. *See* Order [doc. # 10]. When she failed to do so, on August 13, 2010, Magistrate Judge Garfinkel extended Ms. Hardesty's deadline until September 13, 2010, noting her *pro se* status. *See* Order [doc. # 11]. On September 10, 2010, Ms. Hardesty moved to extend the deadline a second time, to October 4, 2010. *See* Mot. for Extension [doc. # 12]. Magistrate Judge Garfinkel granted Ms. Hardesty's motion with the Commissioner's consent. *See* Order [doc. # 13]. However, Ms. Hardesty did not file the pending Motion for Order Reversing the Decision of the Commission until October 6, 2010, two days after the final court-imposed deadline.

## II.

At the outset, the Court will not dismiss Ms. Hardesty's case merely because she filed her motion to reverse two days after the final court-imposed deadline. It is true that Rule 41(b) of the *Federal Rules of Civil Procedure* authorizes a defendant to file a motion to dismiss an action for failure to comply with any court order, and that this Court even has the inherent authority to *sua sponte* dismiss an action with prejudice for failure to prosecute. *See Link v. Wabash Railroad Co.*, 370 U.S. 626, 630-31 (1962); *Lyell Theatre Corp. v. Loews Corp.*, 682 F.2d 37 (2d Cir. 1982). It is also true that the October 4, 2010 deadline was not the first filing deadline that Ms. Hardesty missed in this case. Nevertheless, the Court believes it would be unreasonable to impose the harsh remedy of dismissal as a sanction for missing a filing deadline by a mere two days. *See Lewis v. Rawson*, 564 F.3d 569 (2d Cir. 2009) (noting that "dismissal for lack of prosecution is a 'harsh remedy' that

should 'be utilized only in extreme situations'" (citation omitted)). Indeed, the Second Circuit has indicated that resolving disputes on the merits it almost always preferable to dismissing them for failure to prosecute. *See New York v. Green*, 420 F.3d 99, 104 (2d Cir. 2005) (citation omitted). Further, the Court believes that dismissal is a particularly inappropriate sanction for failure to comply with a filing deadline where the plaintiff is *pro se*, as Ms. Hardesty is in this case.

## III.

This Court's authority to review the Commissioner's decision denying Ms. Hardesty's application for Supplemental Security Income and Social Security Disability Insurance Benefits, embodied in the ALJ's written decision, is limited. The Court may only set aside the Commissioner's decision if it resulted from legal error, or if the Commissioner's factual findings were not supported by substantial evidence. *See* 42 U.S.C. § 405(g) (granting reviewing courts the authority "to enter . . . a judgment . . . reversing [a] decision . . . with or without remanding the cause for a rehearing" if that decision evinces legal error or is not supported by substantial evidence); *see, e.g.*, *Burgess v. Astrue*, 537 F.3d 117, 127 (2d Cir. 2008). Substantial evidence is less than a preponderance of the evidence, but "more than a mere scintilla" – it is the amount of evidence that "a reasonable mind might accept as adequate to support a conclusion." *Zabala v. Astrue*, 595 F.3d 402, 408 (2d Cir. 2010) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). The substantial evidence standard is a "fairly deferential standard." *Gonzalez ex rel. Guzman v. Commissioner of the U.S. Department of Health & Human Services*, No. 09-2006-cv, 2010 WL 106660, at *1 (2d Cir. Jan. 13, 2010) (summary order) (citing *Clark v. Commissioner of Social Security*, 143 F.3d 115, 118 (2d Cir. 1998)).

It was Ms. Hardesty's burden to demonstrate to the Commissioner that she was unable to

work from September 1, 2004 through December 31, 2009 "by reason of a[] medically determinable physical or mental impairment [or combination of impairments] which c[ould] be expected to result in death or which h[ad] lasted or c[ould] be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). In order to prevail, then, Ms. Hardesty had to show that her impairment or combination of impairments was "of such severity that [s]he [was] not only unable to do [her] previous work but c[ould not], considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exist[ed] in the national economy." *Id.* § 423(d)(2)(A); *see also* 20 C.F.R. § 404.1520(c) (requiring that impairment must "significantly limit . . . physical or mental ability to do basic work activities" in order to be considered "severe").

The Commissioner must apply familiar five-step analysis in order to determine whether or not an applicant for Supplemental Security Income or Social Security Disability Insurance Benefits is disabled within the meaning of the Act. *See* 20 C.F.R. § 404.1520. The Second Circuit has described that five-step analysis as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience. . . . Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

*See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quoting *Berry v. Schweiker*, 675 F.2d 464,

467 (2d Cir. 1982) (per curiam)) (alterations in original). Through the fourth step of that analysis, "the claimant carries the burdens of production and persuasion, but if the analysis proceeds to the fifth step, there is a limited shift in the burden of proof and the Commissioner is obligated to demonstrate that jobs exist in the national or local economies that the claimant can perform" given what is known as her "residual functional capacity." *Gonzalez*, 2010 WL 106660, at *2 (citing *Poupore v. Astrue*, 566 F.3d 303, 306 (2d Cir. 2009) (per curiam)). "Residual functional capacity" is what a person is still capable of doing despite limitations resulting from her physical and mental impairments. *See* 20 C.F.R. § 416.945(a); *see, e.g.*, *Poupore*, 566 F.3d at 306.

When applying that five-step analysis, the Commissioner must take four different categories of evidence into consideration. The Commissioner must consider, to the extent that such evidence is in the record: "(1) the objective medical facts; (2) diagnoses or medical opinions based on such facts; (3) subjective evidence of pain or disability testified to by the claimant or others; and (4) the claimant's educational background, age, and work experience." *Brown v. Apfel*, 174 F.3d 59, 62 (2d Cir. 1999) (citation omitted). Furthermore, the Commissioner must keep in mind in applying the five-step analysis that "eligibility for benefits is to be determined in light of the fact that the Social Security Act is a remedial statute to be broadly construed and liberally applied." *Bastien v. Califano*, 572 F.2d 908, 912 (2d Cir. 1978); *see Vargas v. Sullivan*, 898 F.2d 293, 296 (2d Cir. 1990).

## IV.

The ALJ found – and the Commissioner does not dispute here – that Ms. Hardesty has not engaged in any substantial gainful activity since September 1, 2004; that since September 1, 2004, Ms. Hardesty has had a number of severe impairments that have significantly limited her physical

and mental ability to do basic work, including left breast cancer, status post lumpectomy, left upper extremity lymphedema, bipolar disorder, depression, anxiety, and alcoholism; and that Ms. Hardesty is no longer able to engage in any of her past relevant work. *See Rosa*, 168 F.3d at 77. Furthermore, Ms. Hardesty does not argue that she has ever suffered from any impairment that is listed in Appendix 1 of the regulations or that meets or medically equals a listed impairment. *See id.* She also does not argue that, assuming the ALJ was correct that she has the residual functional to engage in light work, and given her age, education, and work experience, there would be no jobs existing in significant numbers in the national economy that she could perform. *See id.*

Thus, the only disputed issue is whether the ALJ erred in determining that, despite Ms. Hardesty's various physical and mental impairments, Ms. Hardesty retained the residual functional capacity to engage in light work between September 1, 2001 and December 31, 2009. *See* 20 C.F.R. § 416.967(b) (defining light work). Regulations promulgated under the Act define five different types of work in the national economy based on the level of physical exertion that they require: "sedentary," "light," "medium," "heavy," and "very heavy." *Id.* § 416.967; *see Vargas*, 898 F.2d at 294. The regulations define "light work" as follows:

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 416.967(b). To be capable of even "sedentary" work – the category requiring the lowest level of physical exertion – "a person must be able to lift ten pounds occasionally, sit for a total of six hours, and stand or walk for a total of two hours in an eight-hour workday." *Carvey v. Astrue*, 380 Fed. App'x 50, 52 (2d Cir. 2010).[3] Thus, this Court's review must focus on whether substantial evidence in the record supported the ALJ's finding that Ms. Hardesty remained capable of working an eight-hour workday involving lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds, and requiring a good deal of walking or standing, even if it involved sitting most of the time, *see id.*; 20 C.F.R. § 416.967(b); and on whether the ALJ committed any legal error in reaching that finding. *See* 42 U.S.C. § 405(g)

Construing Ms. Hardesty's *pro se* filings liberally as the Court must, *see Ajlani v. Chertoff*, 545 F.3d 229, 235 (2d Cir. 2008), the Court believes that Ms. Hardesty has fairly raised three specific challenges to the ALJ's residual functional capacity finding. First, she argues that the ALJ failed to afford proper deference to two medical opinions in the record provided by her treating physicians, *see Zabala*, 595 F.3d at 409, and that even if those opinions were not entitled to any particular deference, the ALJ still erred by utterly failing to take them into consideration. *See, e.g.*, *Tejada v. Apfel*, 167 F.3d 770, 776 (2d Cir. 1999) (reversing and remanding to consider objective medical evidence in the record that the ALJ overlooked). Second, she argues that the ALJ failed to apply the proper standard for assessing the credibility of Ms. Hardesty's testimony and the credibility of Ms. Hardesty's mother's testimony at the hearing. *See* Soc. Sec. Rul. 96-7p, 61 Fed. Reg. 34483,

---

[3] At the ALJ hearing, a vocational expert who testified at the hearing testified that a person with the limitations Ms. Hardesty has would not be capable of performing sedentary work because such work typically requires frequent, repetitive use of both hands. *See* A.R. at 46.

34483-88. Third, she argues that considering all of the evidence in the record, the ALJ's residual functional capacity finding was not supported by substantial evidence. The Court will consider each of her three arguments in turn below.

**A.**

Ms. Hardesty points out, and the Commissioner concedes, that the ALJ's written decision does not mention two documents that are in the administrative record. The first document is a January 18, 2007 Medical Source Statement of Ability to Do Work-Related Activities (Physical) ("Source Statement") submitted by Dr. Sundaramurthy Balachandran of Putnam, Connecticut. *See* A.R. at 568-73. The second document is a July 9, 2009 letter signed by Janine Forfara, a social worker; Rose Zmyslinski, an advanced practice registered nurse; and Dr. Thomas Dziadosz, a psychologist, all of whom work at the William W. Backus Hospital ("Backus Hospital") in Norwich, Connecticut. *See* A.R. at 644. According to Ms. Hardesty, both of those documents constitute opinions by her treating physicians and are thus entitled to special deference. *See Green-Younger v. Barnhart*, 335 F.3d 99, 106-07 (2d Cir. 2003); *see, e.g.*, *Crossman v. Astrue*, --- F. Supp. 2d ----, 2010 WL 2982987, at *6 (D. Conn. 2010). The Commissioner argues that the "treating physician rule" does not apply to Dr. Balachandran's Source Statement because there is no evidence in the record that Dr. Balachandran was ever Ms. Hardesty's treating physician, and that the rule also does not apply to the Backus Hospital opinion because there is no evidence in the record that anyone who signed the letter was ever Ms. Hardesty's treating physician.

This Court recently had occasion to apply the treating physician rule in *Crossman v. Astrue*, 2010 WL 2982987, at *6. Although a treating physician's opinion on the "ultimate legal issue of

disability" does not carry any special significance, *see* 20 C.F.R. § 416.927(e)(1), a treating physician's opinion regarding "the nature and severity" of a claimant's disability *is* entitled to some deference. *See* 20 C.F.R. § 404.1527(d)(2). "It is well-settled that an ALJ cannot substitute her own judgment for that of a medical professional." *Gunter v. Commissioner of Social Security*, No. 08-5544-cv, 2010 WL 145273, at *1 (2d Cir. Jan. 15, 2010) (summary order) (citing *Green-Younger*, 335 F.3d at 106). "[W]hile genuine conflicts in the medical evidence are for the ALJ to resolve," *id.* (citing *Burgess*, 537 F.3d at 128), "[the] 'treating physician rule' directs the ALJ to give controlling weight to the opinion of the treating physician so long as it is consistent with the other substantial evidence." *Id.* (citing, among others, *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 829 (2003)). Before discrediting the medical conclusions of a treating physician, then, the ALJ must "explicitly consider" several favors, *id.*, including:

> (1) the frequency of examination and length, nature, and extent of the treatment relationship; (2) the evidence in support of the physician's opinion; (3) the consistency of the opinion with the record as a whole; (4) whether the opinion is from a specialist, and (5) other factors brought to the Social Security Administration's attention that tend to support or contradict the opinion.

*Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004). An ALJ's failure to provide "good reasons" for the weight accorded to such an opinion may justify a remand. *Gunter*, 2010 WL 145273, at *1.

The Court agrees with the Commissioner that Dr. Balachandran Medical Source Statement is not entitled to any particular deference under the treating physician rule. In her initial application for Supplemental Security Income and Social Security Disability Insurance Benefits filed on August 28, 2006, Ms. Hardesty listed a number of doctors from whom she received medical treatment. *See* A.R. at 191-98. Dr. Balachandran's name does not appear anywhere on that list. To the contrary, Ms.

Hardesty's admission record from the Backus Hospital dated November 28, 2005 indicates that her primary care physician at that time was a Dr. Lucien. *See* A.R. at 627. When Ms. Hardesty was admitted to the Backus Hospital on March 24, 2006, she indicated that her primary care physician was a doctor at "Generations in Danielson." A.R. at 425. Yet another document in the record dated June 16, 2006 indicates the Ms. Hardesty's primary care physician at that time was in fact Dr. Xinyue Liu-Chen, who practiced at Generations Family Health Center in Danielson, Connecticut. *See* A.R. at 437. Ms. Hardesty did not mention Dr. Balachandran in her testimony before the ALJ, and there are no documents in the administrative record pertaining to any treatment Ms. Hardesty received from Dr. Balachandran. The sole indication in the record that Dr. Balachandran may have treated Ms. Hardesty is his own Medical Source Statement, in which he indicates that was first able to observe Ms. Hardesty's condition in 2004. *See* A.R. at 573. But even the Medical Source Statement does not in any way illuminate the circumstances under which Dr. Balachandran was able to observe Ms. Hardesty's condition, either in 2004 or at any other time.[4]

Even assuming, however, that Dr. Balachandran was Ms. Hardestry's treating physician, the Court would not remand to the ALJ to have her provide the reasons for the weight she accorded to Dr. Balachandran's Medical Source Statement. *See Gunter*, 2010 WL 145273, at *1. The reason the Court would not remand for that purpose is that Dr. Balachandran's Medical Source Statement does

---

[4] The Federal Reviewing Official who initially examined Ms. Hardesty's application for Supplemental Security Income and Social Security Disability Insurance Benefits assumed that Dr. Balachandran was indeed Ms. Hardesty's primary care physician, despite the fact that the record at that time contained no evidence that Dr. Balachandran ever treated Ms. Hardesty. *See* A.R. at 80. That said, even the Federal Reviewing Official ultimately concluded that Dr. Balachandran's Medical Source Statement did not support Ms. Hardesty's allegations because it was incomplete, and that it was also inconsistent with other medical opinion evidence in the record. *See* A.R. at 80.

not in fact support any conclusion different from the one the ALJ reached. Dr. Balachandran wrote on his Medical Source Statement that during an eight-hour workday, Ms. Hardesty was capable of sitting for two hours at a time without interruption, standing for thirty minutes at a time without interruption, and walking for thirty minutes at a time without interruption. *See* A.R. at 569. But on the portion of the form asking Dr. Balachandran to indicate the total amount of time that Ms. Hardesty was able to spend sitting, standing, and walking during the course of an eight-hour workday day, Dr. Balachandan simply wrote "n/a" and noted that Ms. Hardesty "ha[d] not worked since February 2004." A.R. at 569. The Court believes it would be unreasonable to read Dr. Balachandran's "n/a" answer as an indication that Ms. Hardesty could spend *no* part of an eight-hour workday sitting, standing, or walking. Indeed, on a different page of the Medical Source Statement, Dr. Balachandran indicated that Ms. Hardesty could spend a full *two-thirds* of an eight-hour workday operating a motor vehicle – and operating a motor vehicle would presumably involve sitting. *See* A.R. at 572. Thus, it appears that Dr. Balachandran simply misunderstood the form and failed to fill it out completely. *See* A.R. at 80 ("Dr. Balachandran's opinion is incomplete because it does not assess how long you are able to sit, stand, and/or walk total in an 8-hour workday.").

The Court also agrees with the Commissioner that the Backus Hospital letter is not entitled to any particular deference under the treating physician rule. The Backus Hospital letter is signed by a social worker, an advanced practice registered nurse, and a psychologist from that facility. Only certain "'acceptable medical sources' can be considered treating sources . . . whose medical opinions may be entitled to controlling weight." Soc. Sec. Rul. 06-3p, 71 Fed. Reg. at 45594 (citing 20 C.F.R. §§ 404.1527(d) and 416.927(d)); *see Genier v. Astrue*, 298 Fed. App'x 105, 108 (2d Cir. 2008)

(summary order). For purposes of this case, the acceptable medical sources are limited to licensed physicians and licensed psychologists. *See* Soc. Sec. Rul. 06-3p, 71 Fed. Reg. at 45594 (citing 20 C.F.R. §§ 404.1502(a) and 416.913(a); *see also Genier*, 298 Fed. App'x at 108 ("In Genier's case, many of the key medical opinions cited during the benefits period at issue were those of a physician's assistant and a nurse practitioner – and not a physician."). Thus, the only signer of the Backus Hospital whose opinion could be entitled to any particular deference under the treating physician rule is Dr. Dziadosz, the psychologist.

But just as there is no evidence in the record indicating that Dr. Balachandran was ever Ms. Hardesty's treating physician, there is also no evidence whatsoever to even suggest that Dr. Dziadosz ever treated Ms. Hardesty at Backus Hospital. The administrative record indicates that at least six different physicians treated Ms. Hardesty at Backus Hospital: Dr. Mary Santa Teresa, *see, e.g.*, A.R. at 515-528; Dr. Barclay Caras, *see, e.g.*, A.R. at 541; Dr. Anca Bulgaru, *see, e.g.*, A.R. at 544-546; Dr. Austin Tagbo, *see, e.g.*, A.R. at 547-48; Dr. Brian Benton, *see, e.g.*, A.R. at 557; and Dr. Keith Fish. *See, e.g.*, A.R. at 559-60. The administrative record further indicates that Ms. Hardesty received treatment from at least two different psychologists at Backus Hospital: Dr. Eric K. Sandberg, Ph.D, *see, e.g.*, A.R. at 534-35; and Dr. Michael Kaiser, Ph.D. *See, e.g.*, A.R. at 554. But there are no documents indicating that Dr. Dziadosz provided Ms. Hardesty with any treatment. His name quite simply does not appear on *any* document in the record other than the letter.

Furthermore, even assuming that Dr. Dziadosz did treat Ms. Hardesty at Backus Hospital, the particular opinion that is expressed in the Backus Hospital letter is not entitled to any special deference. Unlike Dr. Balachandran's Medical Source Statement and the other medical opinion

documents in the record – which contain relatively detailed findings about Mr. Hardesty's ability to perform various tasks for various lengths of time – the Backus Hospital letter says nothing more than that its authors believe that Ms. Hardaway is disabled. *See* A.R. at 644 ("In our clinical opinion, Ms. Hardesty qualifies as clinically disabled and our hope is that she will qualify for Social Security Disability."). "Federal regulations make clear that whether a physician believes an applicant is disabled is irrelevant, since this determination is reserved to the Commissioner." *Gladden v. Commissioner of Social Security*, 337 Fed. App'x 136, 138 (2d Cir. 2009) (summary order) (quotation marks and citation omitted); *see* 20 C.F.R. § 416.927(e)(1) (providing that a treating physician's opinion on the "ultimate legal issue of disability" carries no special significance). The ALJ was not required to defer to that opinion, even if it came from a treating physician.

The Court also construes Ms. Hardesty's filings as arguing that the Commissioner's decision should be reversed or remanded because the ALJ's decision did not mention either Dr. Balachandran's Medical Source Statement or the Backus Hospital letter. But that argument has no merit. The Second Circuit holds that "[w]hen . . . the evidence in the record permits [a court] to glean the rationale of an ALJ's decision, we do not require that he have mentioned every item of testimony presented to him or have explained why he considered particular evidence unpersuasive or insufficient to lead him to a conclusion of disability." *Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983) (per curiam); *see, e.g.*, *Miller v. Commissioner of Social Security*, No. 08-1889-cv, 2010 WL 4904023, at *4 (2d Cir. Dec. 2, 2010) (summary order). Thus, the Court will consider Dr. Balachandran's Medical Source Statement and the Backus Hospital letter along with all of the other

evidence in the portion of this Ruling and Order addressing whether the ALJ's residual functional capacity finding was or was not supported by substantial evidence.

**B.**

Before turning to that final issue, the Court must briefly address one additional legal error alleged by Ms. Hardesty. Ms. Hardesty argues that the ALJ failed to apply the proper legal standard in assessing the credibility of Ms. Hardesty's testimony and Ms. Hardesty's mother's testimony at the hearing. "[T]he extent to which an individual's statements about [her] symptoms can be relied upon as probative evidence in determining whether the individual is disabled depends on the credibility of the statements." Soc. Sec. Rul. 96-7p, 61 Fed. Reg. at 34485. An ALJ is required to make specific findings when assessing the credibility of an applicant's statements about her own symptoms:

> When evaluating the credibility of an individual's statements, the adjudicator must consider the entire case record and give specific reasons for the weight given to the individual's statements. The finding on the credibility of the individual's statements cannot be based on an intangible or intuitive notion about an individual's credibility. The reasons for the credibility finding must be grounded in the evidence and articulated in the determination or decision. It is not sufficient to make a conclusory statement that "the individual's allegations have been considered" or that "the allegations are (or are not) credible." It is also not enough for the adjudicator simply to recite the factors that are described in the regulations for evaluating symptoms. The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight. This documentation is necessary in order to give the individual a full and fair review of his or her claim, and in order to ensure a well-reasoned determination or decision.

*Id.* at 34485-86. The Second Circuit has indicated that a court may not second-guess an ALJ's credibility determination so long as "the ALJ identified specific record-based reasons for his [or her] ruling." *Stanton v. Astrue*, 370 Fed. App'x 231, 234 (2d Cir. 2010) (summary order).

The Court discerns no legal error in the ALJ's determinations regarding the credibility of the hearing testimony. First, Ms. Hardesty's suggestion that the ALJ committed legal error by failing to make specific findings about the credibility of Ms. Hardesty's mother's testimony is baseless. Social Security Ruling 96-7p plainly requires an ALJ to make specific findings regarding the credibility of an applicant's own statements regarding her symptoms – but it *does not* require an ALJ to make specific findings regarding the credibility of any other witnesses who may appear on an applicant's behalf. That said, whenever any judge – including ALJs and even district court judges – determines that a witness's testimony is not credible, she should explain her reasons for making that determination. If the ALJ disbelieved Ms. Hardesty's mother's testimony, she should have explained her reasons. But there is no indication anywhere in the ALJ's decision that she disbelieved Ms. Hardesty's mother's testimony. Rather, Ms. Hardesty's mother's testimony simply did not include any assertions directly contradicting the medical opinion evidence in the record regarding Ms. Hardesty's ability to complete specific physical tasks and to work a full eight-hour workday.

Second, with regard to the ALJ's finding regarding the credibility of Ms. Hardesty's testimony, the ALJ in fact cited a great deal of specific evidence in the record in support of her conclusions that "the claimant's statements concerning the intensity, persistence, and liming effects of [her] symptoms are not credible to the extent of precluding all work activity," A.R. at 63, and that "the degree of limitations the claimant claims to have is not fully supported by the medical evidence." A.R. at 66. For example, the ALJ appropriately cited Ms. Hardesty's two-week vacation to Utah, her trip to a farm retreat in New York State, and her ability to drive a car as undermining her claim that she was not capable of completing a full eight-hour workday. *See* A.R. at 64. The ALJ

also discussed at length the diagnostic impressions from various doctors in the record indicating that at various times during the relevant period, Ms. Hardesty's physical and mental condition improved significantly. *See* A.R. at 64-66 (citing, for example, that "the most recent reports from the . . . Backus Hospital dated January 2009 to April 2009 document that the claimant has been alcohol free for the past five months and reports doing better"). The ALJ cited more than enough evidence to make the reasons for her credibility finding clear to this Court. *See Stanton*, 370 Fed. App'x at 234.

## C.

Finally, the Court liberally construes Ms. Hardesty's filings to raise the argument that, considering the administrative record as a whole, the ALJ's residual functional capacity finding was not supported by substantial evidence. As Ms. Hardesty herself puts it, she believes that "[her] story has largely been misunderstood." Mem. in Supp. of Pl.'s Mot. for Order Reversing the Decision of the Commissioner [doc. # 15] at 13. In particular, she faults the ALJ for focusing too much attention on "the fact that [she] went on vacation, and other superficial arguments," *id.* at 13, rather than on the medical evidence in the record. The Court sympathizes with the physical and mental challenges which Ms. Hardesty has faced since 2004, and there is certainly evidence in the record – particularly, Ms. Hardesty's own testimony – which could support a different result than the one the ALJ reached. But applying the limited standard of review authorized by 42 U.S.C. § 405(g), the Court can only conclude that the ALJ's finding regarding Ms. Hardesty's residual functional capacity was indeed supported by substantial record evidence.

Indeed, the medical opinion evidence in the record generally supports the ALJ's conclusion that Ms. Hardesty retained the capacity to engage in light work, rather than Ms. Hardesty's claim that

she could not work at all during the relevant period. Dr. Rudolph Titjani's Medical Source Statement of Ability to Do Work-Related Activities (Physical), indicates that during the relevant period, Ms. Hardesty was capable of sitting for a total of six hours, standing for a total of four hours, and walking for a total of four hours during the course of an eight-hour workday. *See* A.R. at 577. Dr. Bilqis Khan's Physical Residual Functional Capacity Assessment indicates that Ms. Hardesty was physically capable of sitting for a total of six hours, standing for a total of four hours, and walking for a total of four hours, all during a full eight-hour workday. *See* A.R. at 469. Nothing in either Dr. Irving H. Cohen's Medical Source Statement of Ability to Do Work-Related Activities (Mental), *see* A.R. at 585-87, or Dr. Thomas M. Hill's Mental Residual Functional Capacity Assessment, *see* A.R. at 495-511, indicates that Ms. Hardesty's ever lacked the capacity to work an eight-hour workday.

Furthermore, some elements of Ms. Hardesty's own testimony and the testimony of Ms. Hardesty's mother also supported the ALJ's residual functional capacity finding and undermined Ms. Hardesty's claimed inability to work. Ms. Hardesty's mother testified that the reason Ms. Hardesty would be unable to care for animals professionally was her lack of "responsibility." A.R. at 40-41. Ms. Hardesty herself admitted that she "might be able to for a couple of days or a period" to engage in the sort of light work that the ALJ eventually concluded she was capable of, and that the most significant obstacle to her engaging in such work "would be . . . [her] concern[s] about [her] performance and [her] reliability." A.R. at 29-30. Even taking into account Ms. Hardesty's testimony and the testimony of Mrs. Hardesty's motion, then, it was perfectly reasonable for the ALJ to conclude that Ms. Hardesty retained the *capacity* – if not the *willingness* – to engage in light work.

Finally, the Court notes that there are extensive medical documents in the record from Dr. Maria Santa Theresa, who treated Ms. Hardesty for alcoholism at Backus Hospital beginning on December 2, 2005. *See* A.R. at 625. Those documents strongly indicate that many of Ms. Hardesty's mental health issues stem from her struggles with alcoholism, and that when she was able to abstain from alcohol at various times during the period at issue in this case, her mental health issues diminished significantly. For example, on February 9, 2008, Dr. Santa Theresa wrote: "At present, patient reports feeling much better. She reports that she feels as though she needs to improve her self-esteem. Currently, the patient offers no medical complaints, however, she reports that she is on several medications, which she would like to resume." A.R. at 600. The documents from Dr. Santa Theresa also cast some doubt on Ms. Hardesty's testimony about the extent to which she was able to engage in volunteer work during the period at issue in this case. Dr. Santa Theresa's records indicate that as of January 31, 2006, Ms. Hardesty had been volunteering at an animal shelter for two weeks. *See* A.R. at 621 ("After having been rejected at several veterinary offices, she is now working at a shelter in Griswold called Kitty Harbor, she started two weeks ago."). A record dated April 20, 2006 even refers to Ms. Hardesty's "job taking care of animals." A.R. at 618. Records from October 23, 2006, *see* A.R. at 614, and from October 4, 2007, *see* A.R. at 608, indicate that Ms. Hardesty was still volunteering at the same animal shelter at those times. Although the ALJ's decision did not explicitly rely on the documents from Dr. Santa Theresa, the Court believes those documents constitute further substantial evidence to support the ALJ's residual functional capacity finding.

**V.**

In sum, the Court concludes that the ALJ's decision that Ms. Hardesty is capable of performing light work was supported by substantial evidence, and furthermore that the ALJ's decision evinced no legal error whatsoever. For those two reasons, Ms. Hardesty's Motion for Order Reversing the Decision of the Commission is DENIED, and the Commissioner's Motion for an Order Dismissing Plaintiff's Case, or, Alternatively, for an Order Affirming the Commissioner's Decision is GRANTED. **The Court directs the Clerk to enter judgment affirming the Commissioner's decision and to close this file.**

IT IS SO ORDERED.

/s/         Mark R. Kravitz
United States District Judge

**Dated at New Haven, Connecticut: March 3, 2011.**